1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  RICKY LAWRENCE,                          1:09-cv-00510-AWI-DLB (HC)

10                    Petitioner,           FINDINGS AND RECOMMENDATION
                                            REGARDING PETITION FOR WRIT OF
11         v.                               HABEAS CORPUS

12                                          [Doc. 1]
    JAMES D. HARTLEY,
13
                      Respondent.
14   _____/

15
16         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                                   BACKGROUND

19         Petitioner is currently in the custody of the California Department of Corrections and

20  Rehabilitation ("CDCR") following his conviction for first degree murder.  Petitioner was

21  sentenced to 25 years to life, which commenced on March 16, 1993.  Petitioner does not

22  challenge the validity of his judgment; rather, he challenges the Board of Parole Hearings'

23  (hereinafter "Board") 2008 decision finding him unsuitable for parole.  Petitioner contends the

24  Board's decision resulted in a violation of his due process rights.

25         On October 23, 2008, Petitioner filed a state petition for writ of habeas corpus in the

26  California Superior Court for the County of Riverside, challenging the 2008 Board decision.

27  (Exhibit A, to Answer.)  The petition was denied on October 31, 2008, on the ground that the

28  "Board of Prison Terms had some evidence upon which to deny parole to Petitioner."  (Exhibit

1

B, to Answer.)  Petitioner then raised the same claims in the California Court of Appeal and California Supreme Court.  (Exhibits C, D, E & F.)  Both petitions were summarily denied. (Exhibits D & F.)

Petitioner filed the instant federal petition for writ of habeas corpus on March 18, 2009. (Court Doc. 1.)  Respondent filed an answer to the petition on May 26, 2009, and Petitioner filed a traverse on July 1, 2009.  (Court Docs. 11, 14.)

STATEMENT OF FACTS[1]

The commitment offense began with the victim's wife, Wanda Jones Jowers, was soliciting to have her husband, Clarence Rufus Jowers, murdered.  Wanda was afraid that her husband was going to sell the trucking company he owned or divorce her.  In late December 1986, she approached an ex-employee, Terry Pierce, and paid him $1,250 to hire a hitman, Lee Phillip, and agreed to pay him another $1,250 after the murder was complete.  The plan was not carried out.  Therefore, Wanda hired Jerry Moore and Petitioner, both employees of her husband's trucking firm, to kill her husband.  She paid Moore $500 and Lawrence $300 for their involvement.  The men believed that Mr. Jowers was causing problems for everyone and needed to be stopped.  The two came up with a plan and agreed on the execution.  Moore borrowed a Winchester 20 gauge shotgun from a friend, which he put on a truck bed owned by the trucking company.  Michael Armantrout was a witness and owned the gun utilized during the murder. Armantrout told authorities that he was present at Moore's house when Moore and Petitioner discussed the murder.  On the night of the murder, Moore, who was manager of the trucking company called Petitioner and told him to meet him at the truck yard because they had work to do.  The victim had arranged to sell two vehicles, a blue Cadillac and a Peterbilt truck, to individuals who were going to drive the vehicles over the border to Mexico.  The three men drove the vehicles to a point approximately 200 feet from a highway in Riverside County. Petitioner placed the shotgun on his lap.  Moore walked to the victim's car and informed him that there was a problem with the truck Petitioner was driving.  The victim walked over to the truck

---

[1] This information is derived from the transcript of the 2008 hearing which summarized the facts of the commitment offense from the Probation Officer's report.

and as he approached was shot twice, once in the right upper chest and once in the stomach. Petitioner and Moore fled the scene.  Both men currently maintain that the other was responsible for the murder of Clarence Jowers.

(Exhibit A, Attachment No. 1, to Answer, at 8-10.)

DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

3

1  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

2  § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

3      As a threshold matter, this Court must "first decide what constitutes 'clearly established

4  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

5  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

6  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

7  of the time of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other

8  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

9  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

10      Finally, this Court must consider whether the state court's decision was "contrary to, or

11 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

12 72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

13 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

14 Court on a question of law or if the state court decides a case differently than [the] Court has on a

15 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

16 at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

17 state court identifies the correct governing legal principle from [the] Court's decisions but

18 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

19 413.

20      "[A] federal court may not issue the writ simply because the court concludes in its

21 independent judgment that the relevant state court decision applied clearly established federal

22 law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

23 A federal habeas court making the "unreasonable application" inquiry should ask whether the

24 state court's application of clearly established federal law was "objectively unreasonable." Id. at

25 409.

26      Petitioner has the burden of establishing that the decision of the state court is contrary to

27 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

28 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.    Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather,

the Court must determine whether there is any evidence in the record that could support the

conclusion of the disciplinary board.  Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill

involved the accumulation of good time credits, the same standard applies to parole, as both

situations "directly affect the duration of the prison term."  Id., *citing* Jancsek v. Oregon Bd. of

Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided

by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for
> release on parole. Regardless of the length of time served, a life prisoner shall be found
> unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
> unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the
> panel shall be considered in determining suitability for parole. Such information shall
> include the circumstances of the prisoner's social history; past and present mental state;
> past criminal history, including involvement in other criminal misconduct which is
> reliably documented; the base and other commitment offenses, including behavior before,
> during and after the crime; past and present attitude toward the crime; any conditions of
> treatment or control, including the use of special conditions under which the prisoner may
> safely be released to the community; and any other information which bears on the
> prisoner's suitability for release. Circumstances which taken alone may not firmly
> establish unsuitability for parole may contribute to a pattern which results in a finding of
> unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner

was provided all that is required.  Petitioner was given advance notice of the hearing, he was

offered representation by counsel at the hearing, he was granted an opportunity to submit

materials for the Board's consideration and an opportunity to be heard during the hearing, and he

was provided a written decision explaining the reasons why parole was denied.  See Answer,

Exhibit A, Attachment No. 1.

The California Supreme Court clarified the standard of the review applicable to parole

decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008).  The applicable

standard "is whether some evidence supports the *decision* of the Board or the Governor that the

inmate constitutes a current threat to public safety, and not merely whether some evidence

confirms the existence of certain factual findings."  Id. at 1212 (emphasis in original and citations

omitted).  As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

At Petitioner's initial parole hearing in 2008, the Board denied parole for several reasons including the dispassionate, calculated and callous nature of the first degree murder, the trivial motive to the murder, lack of understanding into the nature and magnitude of the crime, and inconclusive psychological report.

With regard to the commitment offense, the Board found the commitment offense was carried out in an especially cruel and callous manner in disregard for human suffering and life.[3] Petitioner and his crime partner planned and executed the murder of their employer in exchange for money.  Although Petitioner disputes that he pulled the trigger of the shotgun and that the victim suffered two fatal gunshot wounds, the evidence before the Board supports this finding. Petitioner used a pump-action shotgun which requires pumping the gun in order to execute the release of the bullet.  The victim was shot twice unexpectantly-once in the right upper chest and

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

once in the stomach at close range.  Petitioner and his partner fled the scene and left the victim to

die.  After the murder, Petitioner returned to his normal life and was not apprehended by

authorities until five years later.  In light of these factual circumstances, there is certainly some

evidence to support the Board's finding that it was carried out in a dispassionate and calculated

manner.

The Board found the motive for the offense to be very trivial as it was done solely for

monetary gain.  The Board was disturbed by the fact that Petitioner and Moore killed the victim

for the "paltry sum" of $500 and $300.  (Exhibit A, Attachment No. 1, Transcript, at 75.)  A

motive is "very trivial" if it is materially less significant than those which conveniently drive

people to commit the offense in question.  In re Scott, 119 Cal.App.4th 871, 893 (2004).  The

finding of "triviality" must somehow relate to the prisoner's present dangerousness.  Id. People in

general are not driven to the point of committing a murder for slight monetary gain, and such

finding is relevant to the determination of whether Petitioner poses a current threat to society if

released on parole.  Therefore, there is some evidence to support the Board's finding that the

motive was very trivial.

The Board also considered Petitioner's present attitude toward the crime as evidenced at

the hearing.  15 C.C.R. § 2402(b).  The Board found that Petitioner did not express remorse and

merely presented his version of the offense.  The Board pointed out that there was a number of

discrepancies between the "Board reports [and] what's written in the probation report."  They just

don't come together.  And that's clearly a problem when we start looking at the totality of

suitability for parole.  The Board can only go by what's documented."  (Exhibit A, Attachment

No. 1, Transcript at 76.)  Some evidence supports this finding.  At the hearing, Petitioner

continuously denied and/or attempted to minimize his involvement in the murder by claiming that

he was not involved with the planning and was not the actual shooter.  However, the evidence in

the record contradicts Petitioner's contention and his failure to adequately explain or rebut such

evidence demonstrates that he remains an unpredictable risk to public safety is released.  See e.g.

Lawrence, 44 Cal.4th at 1228 ("[W]here the record also contains evidence demonstrating that the

inmate lacks insight into his or her commitment offense or previous acts of violence, even after

8

rehabilitative programming tailored to addressing the issues that led to commission of the offense, the aggravated circumstances of the crime reliability may continue to predict current dangerousness even after many years of incarceration.")  Because some evidence supports the Board's finding that Petitioner was minimizing his commitment offense and did not fully understand the nature and magnitude of his offense, it cannot be said that the state court's finding that "some evidence" supported the determination of present dangerousness was contrary to or an unreasonable application of clearly established federal law.

The Board found that the psychological report authored by Dr. Steve Pointkowski was not totally supportive of release.  The Board pointed out that Dr. Pointkowski noted the fact that the shooting of the victim twice was indicative of callousness, and Petitioner's claim that he attempted "to prevent his life crime from occurring and that it was accidental was reflective of a lack of remorse, guilt, and a failure to accept responsibility for his actions."  (Exhibit A, Attachment No. 1, Transcript, at 78.)

Pursuant to section 2402(d), the Board also considered the positive factors and commenced Petitioner for having not received a single rules violation report and being productive during his incarceration.  However, on balance the Board found the positive aspects did not outweigh the factors of unsuitability.

Petitioner contends that the Board violated his plea agreement resulting in a due process violation.[4]  In support of his claim, Petitioner submits a letter from the Riverside County District Attorney's office which recommends that CDCR consider Petitioner for release on parole at the earliest possible date.  However, Petitioner does not submit any evidence that the plea agreement included a provision that Petitioner would be released on parole immediately after serving his minimum eligible parole date.  Petitioner has presented nothing to show he was promised he would be released after a certain amount of time.  Indeed, his sentence was for life *with* the *possibility* of parole.  Moreover, Petitioner has not been denied parole forever, rather the Board set

---

[4] To the extent Petitioner attempts to challenge the validity of his plea agreement by claiming he is actually innocent of the offense and the prosecutor engaged in misconduct, such claim is not cognizable in the instant proceeding as this Court's review is limited to the 2008 Board hearing.

another hearing four years out and encouraged Petitioner to continue making positive progress so that he may one day be eligible for parole.  Furthermore, Petitioner's claim that the Board failed to consider the District Attorney's letter recommendation does not aid him because the Board determined that he did not meet the suitability criteria for release on parole.  Absent evidence to support Petitioner's claim, this Court cannot grant habeas corpus relief and his claim must be denied.

It is also noteworthy that Petitioner has not yet served the minimum term of his sentence. At the time of the 2008 hearing, Petitioner had only served 15 years of his 25-years-to-life sentence.  Thus, the concern expressed in <u>Biggs</u>, and its progeny, are not present here.[5]

In conclusion, the factors of the commitment offense and trivial motive, coupled with Petitioner's lack of insight and remorse into the commitment offense, and inconclusive psychological report, provide "some evidence" that Petitioner continues to be a risk to public safety if released.  <u>See</u> <u>In re Lawrence</u>, 44 Cal.4th at 1212, 1221 ("the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense."  "It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.")

The Board's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

---

[5] In <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-17 (9th Cir. 2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." <u>Irons v. Carey</u>, 505 F.3d 846, 853 (9th Cir. 2007), *citing* <u>Biggs</u>, 334 F.3d at 916.  Nevertheless, as in this case, in both <u>Irons</u> and <u>Biggs</u>, the Ninth Circuit upheld the denials of parole because in each of these cases the prisoner had not yet served the minimum term of his sentence. Therefore, the due process concerns noted in <u>Biggs</u> is not at issue in this case.

of the facts in light of the evidence before the state court."

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     The instant petition for writ of habeas corpus be DENIED; and,

2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    July 20, 2009**          **/s/ Dennis L. Beck**
                                 UNITED STATES MAGISTRATE JUDGE